MARK E. FERRARIO
Nevada Bar No. 1625
KARA B. HENDRICKS
Nevada Bar No. 7743
WHITNEY L. WELCH-KIRMSE
Nevada Bar No. 12129
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Ste. 600
Las Vegas, NV 89135
Tel: (702) 792-3773
Fax: (702) 792-9002
Email: ferrariom@gtlaw.com
hendricksk@gtlaw.com
welchkirmsew@gtlaw.com

*Attorneys for Defendants*
*Clark County School District and Pat Skorkowsky*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

J. W., a minor, by and through his Parents Joshua and Britten Wahrer,

Plaintiffs,

v.

CLARK COUNTY SCHOOL DISTRICT; PAT SKORKOWSKY, individually, and in his official capacity as former superintendent of Clark County School District; MELODY CARTER, individually and in her capacity as Plaintiff's former teacher of record; DOES I-X, and ROE CORPORATIONS I-X, inclusive,

Defendants.

Case No. 2:19-cv-00965-RFB-GWF

**CLARK COUNTY SCHOOL DISTRICT AND PAT SKORKOWSKY'S MOTION TO DISMISS**

**(ORAL ARGUMENT REQUESTED)**

Defendants, Clark County School District ("CCSD") and Pat Skorkowsky ("Mr. Skorkowsky") (collectively the "CCSD Defendants"), by and through their counsel, GREENBERG TRAURIG, LLP, hereby submit this Motion to Dismiss Plaintiff's Complaint ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6).

/ / /

/ / /

This Motion is based upon the pleadings on file herein, the attached Memorandum of Points and Authorities, and any oral argument the Court may permit at the hearing of this matter.

DATED this 13th day of June, 2019.

**GREENBERG TRAURIG, LLP**

*/s/ Kara B. Hendricks*
MARK E. FERRARIO
Nevada Bar No. 1625
KARA B. HENDRICKS
Nevada Bar No. 7743
WHITNEY L. WELCH-KIRMSE
Nevada Bar No. 12129
10845 Griffith Peak Drive, Ste. 600
Las Vegas, NV 89135

*Attorneys for Defendants Clark County School District and Pat Skorkowsky*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff is a six-year-old autistic boy who, since the 2016/2017 school year, has attended school in a special education program at Clark County School District. He filed this lawsuit against the CCSD Defendants and his former teacher based on 1) purported violations of state tort law, 2) purported violations of federal and state laws protecting those with disabilities, and 3) purported violations of federal laws protecting a student's constitutional right to be free from government use of excessive force.

Plaintiff's claims primarily arise from an incident, which occurred on May 2, 2018, when Plaintiff was attending Harmon Elementary School ("Harmon ES") and Defendant Melody Carter ("Carter") was his teacher. That day, Carter allegedly struck Plaintiff's legs with a wooden pointer stick that had a rubber hand on the end when he would not put his shoes on. On the morning of May 3, 2018, the substitute teacher's aide who witnessed the incident reported the same to Harmon ES administration, who called the CCSD Police Department ("CCSDPD"), Child Protective Services, and Plaintiff's parents. That same day, Carter was permanently removed from the classroom.[1] After

[1] Following the May 2nd incident, Carter did not work for CCSD.

CCSDPD completed their investigation of Carter, a request for prosecution was submitted to the District Attorney and she was charged.

Shortly thereafter, Plaintiff (through his parents) filed an administrative complaint pursuant to the Individuals with Disabilities Education Act ("IDEA") to challenge the adequacy of the educational services and benefits provided to him.[2] In his administrative complaint, Plaintiff asserted his Individualized Educational Plan ("IEP") was not appropriate and/or not followed, he was deprived of food and water, he was not educated in a sanitary environment, and that staff used corporal punishment against him. Plaintiff sought compensatory education time to make up for asserted benefit denials. The Independent Hearing Officer ("IHO") presiding over this dispute awarded four (4) hours of compensatory education, as opposed to the over 500 hours requested. Plaintiff is currently appealing this decision through the administrative claims process. Administrative claims for FAPE denial under the IDEA are separate and distinct from civil claims seeking monetary damages.

In this case, Plaintiff is conflating claims under the IDEA with the civil claims he is attempting to assert. Indeed, it is clear that he seeks IDEA relief for denial of a free and appropriate education and is therefore utilizing this lawsuit to thwart the administrative procedures specifically designed to resolve those issues. Moreover, because the factual predicates of and relief sought by Plaintiff's administrative IDEA claim overlap with those stated in the subject Complaint, Plaintiff is required to exhaust the administrative claim process and he has not done so. As a result, Plaintiff's claims alleging failure to provide educational benefits and a remedy for educational loss are not proper and should be dismissed. If Plaintiff disagrees with the final decision of the State Review Officer ("SRO") adjudicating the appeal, he may seek judicial review of that decision, but filing a separate lawsuit asking the Court to craft the same remedy under the guise of a different statute is wholly improper.

Finally, in addition to the improper education based relief Plaintiff requests, the Complaint contains other deficiencies that require dismissal of certain claims. First, Defendant Mr. Skorkowsky should be dismissed as a party, as there is no basis to sue him individually. Plaintiff alleges that the

[2] The IDEA offers federal funds to States in exchange for a commitment to furnish a "free and appropriate public education" ("FAPE") to children with certain disabilities, 20 U. S. C. §1412(a)(1)(A), and establishes formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE. Other federal statutes also protect the interests of children with disabilities, including Title II of the Americans with Disabilities Act (ADA) and §504 of the Rehabilitation Act.

only connection between Mr. Skorkowsky and this case is that he acted as CCSD's superintendent during the timeframe of events alleged in the Complaint. This fact alone cannot subject Mr. Skorkowsky to liability for any of the claims plead against him. Second, Plaintiff fails to factually allege how CCSD is liable for the assault and battery that Carter allegedly committed on Plaintiff; therefore, CCSD should be dismissed from those claims. Third, Plaintiff fails to factually allege how CCSD is responsible for Carter's actions, based on a failure to supervise. Because there are no allegations to show that CCSD was on notice of Carter's alleged physical abuse or alleged "dangerous propensities", Plaintiff's claim for negligent hiring, training and supervision fails. And finally, Plaintiff improperly asserts a cause of action for "double damages" under NRS 41.1395. Not only does this statute not provide a separate cause of action, but Nevada limits the amount of damages recoverable against a political subdivision of the state, such as the CCSD Defendants, and therefore, NRS 41.1395 does not apply to CCSD.

Based on the foregoing, Mr. Skorkowsky should be dismissed as a party, along with Plaintiff's Claims 3, 4, 7, 8, 9 and 10. Further, Plaintiff's allegations seeking leave to amend to identify Plaintiff's damages at a later time are improper and further illustrate deficiencies in the subject Complaint. (Compl., ¶¶ 70, 76, 77, 87, 88, 101, 102, 110, 111, 123, 124, 133, 134, 149 and 150).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS RELATING TO THE CCSD DEFENDANTS[3]

### A. PLAINTIFF'S ALLEGATIONS AGAINST FORMER SUPERINTENDENT PAT SKORKOWSKY

Plaintiff is suing Mr. Skorkowsky individually and in his capacity as former superintendent of CCSD for what appears to be the following causes of action: (1) assault, (2) battery, (3) negligence per se, (4) intentional infliction of emotional distress, (5) violation of substantive due process under § 1983, (6) violation of equal protection, (7) violation of the Americans with Disabilities Act, and (8) abuse of a vulnerable person (Plaintiff's Claims 1, 2, 3, 5, 6, 7, 8 and 9).[4] However, the Complaint contains only three allegations related to Mr. Skorkowsky, none of which identify any actions by him personally,

[3] While the CCSD Defendants dispute many of Plaintiff's factual allegations, the summary set forth herein accepts such allegations as true for the purpose of this Motion to the extent required by FRCP 12(b)(6).

[4] It is not clear from the Complaint which claims are being asserted against which defendants as all of Plaintiff's claims allege actions by "CCSD and its employees."

related to J.J., his teacher or his school. Plaintiff's failure to assert any personal actions taken by Mr. Skorkowsky is not surprising, given that the role of superintendent is essentially one of "CEO" tasked with implementing the school board's vision, not of supervising the education and care each individual student at the micro level.

All Plaintiff alleges is that Mr. Skorkowsky acted as Superintendent of CCSD during the time the incidents occurred involving J.J. and as such, Mr. Skorkowsky was responsible for those incidents. (Compl., ¶ 5) (Doc. No. 1, Ex. A). Further, Plaintiff alleges that Carter and the unnamed CCSD employees who mistreated J.J. were under the authority, direction or control of Mr. Skorkowsky simply because he acted as Superintendent. *Id*. at ¶¶ 19, 20. As such, Plaintiff is trying to assert liability against Mr. Skorkowsky solely based on his title of superintendent, not based on any involvement he had with the alleged events involving J.J. that are described in the Complaint. Such allegations are insufficient to maintain claims against Mr. Skorkowsky individually or in his capacity as a former CCSD employee and he should be dismissed forthwith.

**B. PLAINTIFF'S ALLEGATIONS AGAINST CCSD**

Plaintiff's claims against CCSD improperly seek educational remedies and are erroneously based on non-binding stipulations entered in different proceedings. Plaintiff alleges that, during the 2017 Spring semester, J.J.'s parents informed the school principal that staff was denying him food and water and failing to change his soiled diapers, yet these issues continued. *Id*. at 24, 25, 26 and 27. Further, Plaintiff alleges that a CCSD classroom aide witnessed J.J.'s teacher Carter strike J.J. with a pointer stick on May 2, 2018, as well as on other prior occasions, but failed to report these events to administration. *Id*. at 38, 39, 40 and 41. Plaintiff contends that CCSD was aware Carter routinely used corporal punishment via the pointer stick and therefore condoned such behavior. *Id*. at ¶ 46 and 60.

In addition to the alleged physical abuse by Carter, Plaintiff claims to have suffered loss of educational benefits and demands revisions to his IEP. To try and support a claim for educational loss and to apparently add "season to the pot" regarding other claims, Plaintiff improperly points to legal and factual stipulations CCSD and Plaintiff reached ***exclusively*** for the purposes of the administrative claim Plaintiff initiated to adjudicate any educational loss Plaintiff sustained as a

result of the events alleged herein ("Administrative Claim").[5] *Id.* at ¶¶ 50-59. However, issues of fact agreed to in a stipulation are not binding in subsequent proceedings unless the parties agree to be so bound and CCSD did not agree for the stipulation reached in the administrative process to be used for any future civil matter.[6] As such, Paragraphs 50 through 59 of the Complaint cannot support Plaintiff's claims and should be disregarded.[7]

Moreover, despite Plaintiff's attempt to assert prior stipulations as facts, CCSD disputes liability in this case. Indeed, Plaintiff's burden of proof to establish liability against the CCSD Defendants has not been excused and this Court should not be misled into thinking Plaintiff's claims are viably plead based on the same.

## III. <u>LEGAL ARGUMENT</u>

### A. LEGAL STANDARD

Fed R. Civ. P. 12(b)(6) authorizes this Court to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must show a plaintiff's entitlement to relief. This "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1664-66

---

[5] Notably, even with the stipulations that were entered, the Independent Hearing Officer ("IHO") denied Plaintiff's request for 585 hours of compensatory education and permission to use the AngelSense tracking and recording device at school. Instead, the IHO ordered (four)4 hours of compensatory education to Harmon ES staff. *See* Ex. 2 to Complaint at pgs. 14-15. Plaintiff has appealed the IHO decision. *See* Appeal (**Exhibit 1**).

[6] "Generally speaking, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion." *United States v. Botefuhr*, 309 F.3d 1263, 1282-83 (10th Cir. 2002) (internal citation omitted); *see also Kane v. Town of Harpswell*, 254 F.3d 325, 329 (1st Cir. 2001). This is particularly true when the stipulation does not clearly state an intent to be bound in a subsequent action. *Id.* Accordingly, numerous circuits, including the Ninth Circuit, have refused to give preclusive effect to particular facts established by stipulation of the parties because such facts have not been "actually litigated." *See, e.g, Bower v. O'Hara*, 759 F.2d 1117 (3d Cir. 1985) (following Restatement view); *Sekaquaptewa v. MacDonald*, 575 F.2d 239, 247 (9th Cir. 1978)(same); *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 992 (5th Cir. 1977), cert. denied, 436 U.S. 944 (1978) ("When one party…concedes or stipulates the issue upon which the court bases its judgment, the issue is not conclusively determined for purposes of collateral estoppel unless it is clear that the parties so intended"); *Red Lake Band v. United States*, 221 Ct. Cl. 325, 607 F.2d 930, 934 (Ct.Cl. 1979) (following restatement view); *see also L.A. Turf Club, Inc. v. Unemployment Ins. Appeals Bd.*, 117 Cal. App. 3d 454, 456 n.1, 172 Cal. Rptr. 803, 803 (1981) (stating the parties in the original administrative proceeding had stipulated to the facts at issue in the litigation, and that the trial of the instant matter "was based on the administrative record <u>*pursuant to further stipulation*</u>") (emphasis added).

[7] At the due process hearing, CCSD's representative explicitly stated on the record that the concessions were for the purposes of J.J.'s due process claim <u>only</u>. *See* Due Process Hearing Transcript dated April 9, 2019 at 17:13-17 (**Exhibit 2**).

(2007). Bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss. *See G.K. Las Vegas Ltd. Partnership v. Simon Prop. Group, Inc.*, 460 F.Supp.2d 1246, 1261 (D. Nev. 2006); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1590, (2009) (quoting Fed.R.Civ.P. 8(a)(2)); *see Twombly*, 550 U.S. at 570 (A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged – but not shown – that the pleader is entitled to relief").

When viewing the allegations in the Complaint in the light most favorable to Plaintiff, there is an absence of facts and/or a cognizable legal theory to support certain claims. Accordingly, such claims are ripe for dismissal.

**B. PAT SKORKOWSKY SHOULD BE DISMISSED FROM THIS LAWSUIT**

All claims against Mr. Skorkowsky in his individual capacity should be dismissed from this lawsuit because there is no factual basis for the same. Indeed, the only connection between Mr. Skorkowsky and this case is his role as CCSD's former superintendent. However, this fact alone cannot subject Mr. Skorkowsky to liability for any of the claims pled against him. Plaintiff's attempt to over-reach in this regard is clearly illustrated in Plaintiff's purported attempt to assert claims against Mr. Skorkowsky for the purported assault and battery by Defendant Carter. However, there are no factual allegations that Mr. Skorkowsky is responsible for Carter's conduct and her alleged intentional acts.

Likewise, claims against Mr. Skorkowsky "in his official capacity" should be dismissed as redundant of claims against CCSD.[8] Suing an employee of the school district in their official capacity is the same, in effect, as suing the school district. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . It is not a suit against the official personally, for the real party in interest is the entity."); *J.R.*

[8] Further, Mr. Skorkowsky is no longer employed CCSD. He acted as CCSD's superintendent from June 2013 through June 2018.

*v. Sylvan Union Sch. Dist.*, No. S-06-2136, 2008 WL 682595, *13 (E.D. Cal. March 10, 2008) (dismissing school superintendent sued in his official capacity, where plaintiffs had alleged same claims against school district); *see also Monell v. Department of Social Services*, 436 U.S. 658, 691, n.55, 98 S. Ct. 2018, 2036, n.55, 56 (1978) ("local government officials sued in their official capacities are 'person' under § 1983 in those cases in which . . . a local government would be suable in its own name). Where an inclusion of a party is redundant, the party becomes an unnecessary party to the suit. Fed. R. Civ. P. 19(a). Thus, to the extent Plaintiff asserts claims against both CCSD and Mr. Skorkowsky in his official capacity as superintendent, such claims are redundant and subject to dismissal.

Additionally, dismissal is warranted as Mr. Skorkowsky is entitled to qualified and discretionary act-immunity.

*1. Qualified Immunity Bars Plaintiff's Section 1983 Claim Against Mr. Skorkowsky (Claim 6).*

Mr. Skorkowsly must be dismissed from Plaintiff's § 1983 claim because he is entitled to qualified immunity. Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986). A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, __U.S. __, 131 S. Ct. 2074, 2083 (2011); *Sandoval v. Las Vegas Metro. Police Dep't*, 854 F. Supp.2d 860, 872 (D. Nev. 2012), *rev'd in part on other grounds*, 756 F.3d 1154, 1158 (9th Cir. 2014).

Moreover, it is well established that "[g]overnment officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982); *see also*, *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986).

Here, Plaintiff alleges that, because Mr. Skorkowsky was superintendent, Carter and the CCSD unnamed employees who allegedly mistreated J.J. were under his authority, direction or control. (Compl., ¶¶ 19, 20). However, there are no factual allegations regarding Mr. Skorkowsly's control over these employees apart from his title as superintendent and no factual allegations that Mr. Skorkowsky was aware of any conduct by Carter or that he would have been personally responsible for addressing the same, as opposed to the administrators of J.J.'s school. Indeed, there are no allegations to show Mr. Skorkowsky had any personal involvement in the alleged events regarding J.J. Moreover, there are no allegations Plaintiff has asserted to dispute that any actions Mr. Skorkowsky may have taken were discretionary and thus protected. As a result, Mr. Skorkowsky is entitled to qualified immunity for the alleged constitutional violations of J.J. and should be dismissed from suit.

*2. Discretionary Act Immunity Bars Liability for Plaintiff's State Law Claims.*

Plaintiff has asserted various state law claims against Mr. Skorkowsky. However, he is entitled to discretionary act immunity and such claims should be dismissed against him individually.

NRS 41.032(2) provides complete immunity from claims based on a state employee's exercise or performance of a discretionary function or duty:

> [N]o action may be brought under NRS 41.031 which is:
>
> 2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

Under the *Berkovitz-Gaubert* test, which Nevada has adopted, immunity attaches to acts that meet two criteria. First, the act must involve an element of judgment or choice. Second, the act must involve a policy decision. The "court need not determine that a government employee made a conscious decision regarding policy considerations in order to satisfy the test's second criterion." *Martinez v. Maruszczak*, 123 Nev. 433, 446, 168 P.3d 720, 728 (2007) (quoting *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993)). In determining whether a discretionary act is entitled to immunity, Nevada courts look to case law interpreting the Federal Tort Claims Act (FTCA), which Nevada's discretionary-act immunity statute is based upon. *See Martinez*, 123 Nev. at 444, 168 P.3d at 727-28.

/ / /

It is well settled that governmental personnel's hiring, training, and supervision decisions are discretionary functions that are shielded from tort liability under NRS 41.032(2). *Martinez*, 123 Nev. at 444, 168 P.3d at 727-28. Indeed, as numerous courts hold, "the hiring, retention, training, supervision and investigation of public employees involves discretionary, policy-related decisions for which a public entity is immune from liability under applicable state law." *See Gordon v. Ottumwa Community Sch. Dist.*, 115 F. Supp. 2d 1077, 1087 (S.D. Iowa 2000); *Davis v. DeKalb Cty. Sch. Dist.*, 996 F. Supp. 1478, 1484 (N.D. Ga. 1998); *Does I, 2, 3, and 4 v. Covington Cty. Sch. Bd.*, 969 F. Supp. 1264, 1285-87 (M.D. Ala. 1997); *C.B. v. Bobo*, 659 So.2d 98, 101 (Ala. 1995); *Willoughby v. Lehrbass*, 150 Mich. App. 319, 388 N.W.2d 688, 700-01 (1986); *Doe v. Park Center High School*, 592 N.W.2d 131, 135-36 (Minn. App. 1999); *Oslin v. State*, 543 N.W.2d 408, 415-16 (Minn. App. 1996); *Kimpton v. Sch. Dist. of New Lisbon*, 138 Wis.2d 226, 234-36, 405 N.W.2d 740, 744-45 (Wis. App. 1987); *see also* 57 Am. Jur. 2d *Municipal Tort Liability* § 534.

Plaintiff bases his state law claims against Mr. Skorkowsky solely on his title of superintendent. (Compl., ¶¶ 5, 19, 20, 120). However, because Plaintiff fails to factually allege that Mr. Skorkowsky was personally involved in the events alleged herein, this Court must assume any actions he took generally as superintendent were discretionary. Accordingly, Mr. Skorkowsky is shielded from tort liability under Nevada law.

### C. PLAINTIFF FAILS TO STATE A CLAIM AGAINST CCSD FOR NEGLIGENCE AND NEGLIGENT HIRING, TRAINING AND SUPERVISION (CLAIMS 3 AND 4)

"The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." *See Lucey v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ*., 2009 WL 971667, *7 (D. Nev. 2009), *quoting Burnett v. C.B.A. Sec. Serv., Inc.*, 820 P.2d 750 (Nev.1991). Breach of this duty occurs when an employer hires an employee when he knew or should have known of the employee's dangerous propensities. *Id., citing Hall v. SSF, Inc.*, 112 Nev. 1384, 930 P.2d 94 (1996). Under Nevada law, employers have a duty to properly train and supervise their employees. *See Lucey*, 2009 WL 971667, *7. Moreover, the fact that an employee violates an employer's rule does not necessarily mean that the employer is liable for negligent supervision or retention. *See Lambey v. Nevada*, 2010

WL 1418865, *4 (D. Nev. 2010); *Reece v. Republic Services, Inc.*, 2011 WL 868386, *11-12 (D. Nev. 2011) ("the fact that an employee acts wrongfully does not in and of itself give rise to a claim for negligent hiring, training, or supervision").

Here, Plaintiff alleges that CCSD is liable for negligent hiring, training and supervision of Carter, the unnamed classroom aides who failed to report Carter, the unnamed employees who failed to give J.J. food and water or change his diaper, and the principal. (Compl., ¶¶ 93-99). However, Plaintiff has failed to state a claim for relief against CCSD. The Complaint contains no factual allegations that these employees had a propensity to disregard CCSD policy or that CCSD was on notice of the same before and during their employment. Allegations of Carter's wrongful acts alone do not give rise to a cause of action against CCSD for negligent supervision; therefore, dismissal is warranted.

Additionally, the CCSD Defendants should be dismissed from Plaintiff's negligence per se claim as duplicative. Here, Plaintiff alleges CCSD failed to protect J.J. from mistreatment by his teacher, which is exactly the crux of his negligent supervision claim. (Compl., ¶ 83). Accordingly, claim 3 is also ripe for dismissal.

**D. PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE CCSD DEFENDANTS FOR ABUSE OF A VULNERABLE PERSON (CLAIM 9)**

Plaintiff has improperly asserted a cause of action based upon NRS 41.1395, which provides for double damages to specified vulnerable persons who are victims of torts. However, Plaintiff's claim under NRS 41.1395 must be dismissed because (1) the statute does not provide a separate cause of action, and (2) Nevada statute limits the amount of damages recoverable against a political subdivision of the state, such as the CCSD Defendants, and therefore, NRS 41.1395 cannot affect the judgment here.

NRS 41.035(1)[9] limits "an award for damages" against political subdivisions of the State to a statutory sum and prohibits the award from including "exemplary or punitive damages." Accordingly,

---

[9] **NRS 41.035(1) provides:**
**Limitation on award for damages in tort actions.**
1. An award for damages in an action sounding in tort brought under NRS 41.031 or against a present or former officer or employee of the State or any political subdivision, immune contractor or State Legislator arising out of an act or omission within the scope of the person's public duties or employment may not exceed the sum of $100,000, exclusive of interest computed from the date of judgment, to or for the benefit of any claimant. An award may not include any amount as exemplary or punitive damages.

NRS 41.1395 cannot be applied against the CCSD Defendants, and Plaintiff's claim based on the same should be dismissed.

Additionally, the NRS 41.035(1) damages cap is applied to a judgment after other adjustments or setoffs are applied. *See Nevada v. Eaton*, 101 Nev. 705, 710 P.2d 1370 (1985), *overruled on other grounds by Nev. Dep't of Transp. v. Hill*, 114 Nev. 810, 963 P.2d 480 (1998). Therefore, even if NRS 41.1395's double recovery did apply here, the NRS 41.035 damages cap would be applied afterwards and would nullify any effect on the judgment. Lastly, because NRS 41.1395 is a remedy and not a cause of action, it may properly be dismissed. *See Blanford v. SunTrust Mortg., Inc.*, 2:12-CV-852 JCM RJJ, 2012 WL 4613023 (D. Nev. Oct. 1, 2012).

**E. PLAINTIFF'S CLAIMS AGAINST THE CCSD DEFENDANTS FOR VIOLATION OF EQUAL PROTECTION, VIOLATION OF THE ADA AND FOR INJUNCTIVE RELIEF ARE RIPE FOR DISMISSAL (CLAIMS 7, 8 AND 10)**

Plaintiff's causes of action for violation of equal protection, violation of the Americans with Disabilities Act ("ADA"), and for injunctive relief all seek recovery based on allegations related to the education CCSD provided to J.J. These claims should be dismissed because (1) Plaintiff failed to exhaust his administrative remedies, and (2) the injunctive relief Plaintiff seeks is improper.

*1. Plaintiff Failed to Exhaust His Administrative Remedies Prior to Filing Suit.*

Education based claims that are covered by the IDEA, which is codified in 20 U.S.C. §1400 *et seq*., require the exhaustion of administrative remedies prior to the initiation of litigation. In interpreting this provision, "the Ninth Circuit has concluded that exhaustion is required when 1) a plaintiff seeks an IDEA remedy or its functional equivalent; 2) a plaintiff seeks prospective injunctive relief to alter an Individual Education Program ("IEP") or the educational placement of a disabled student; or 3) a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education ("FAPE"), whether plead as an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the cause of action." *D.C. v. Oakdale Joint Unified Schl Dist.,* (E.D. Cal. 2011), 2011 WL 5828187, *3, citing *Payne v. Peninsula Schl Dist.,* 653, F.3d 863, 875 (9th Cir. 2011). A plaintiff's failure to exhaust administrative remedies can be considered by the court as a Rule 12(b) motion to dismiss to determine if exhaustion has occurred. *Payne v. Peninsula Schl Dist.,* 653 F.3d at 881.

The following allegations show Plaintiff's intent to seek an IDEA remedy or its functional equivalent in this case:

- J.J. is and was at all times material to the allegations of this Complaint entitled to receive full and equal access to a free and appropriate public education through the CCSD. *See* Compl., ¶ 15.
- By failing to change J.J.'s diaper, CCSD acted inconsistent with what was provided for in his IEP. *Id*. at ¶ 24.
- CCSD and its employees implemented and administered an IEP that was inconsistent with and inappropriate for J.J.'s educational needs. *Id*. at 130, 145.
- Defendants denied J.J. the benefits of the services, programs, and activities to which he is otherwise entitled from CCSD. *Id*. at 147.
- Plaintiff seeks a preliminary injunction mandating that CCSD develop and administer an IEP for J.J. that removes the negative reinforcement measures and replace this with an appropriate IEP to enable him to flourish in the educational setting. *Id*. at 168.
- On September 20, 2018, counsel for J.J. filed a Request for Impartial Due Process hearing pursuant to the Individuals with Disabilities Education Act in order to address the abuse and neglect that occurred during the 2017 Spring semester, to address the abuse that occurred during the 2017 Fall and 2018 Spring semesters, and to obtain remedies for the violations that occurred. *Id*. at ¶ 50.
- On April 22, 2019, the IHO presiding over the Due Process Hearing issued a decision and refused to award the Supplemental Aid and Service and refused to award J.J. with any compensatory education. *Id*. at 52, 59.

Based on the foregoing, there is no disputing that Plaintiff intends to seek redress for the educational benefits and services he likewise sought in his Administrative Claim. However, such claims are not properly before the Court because the administrative claims process is still pending. On May 13, 2019, Plaintiff filed an appeal of the IHO's decision and adjudication of the same is pending.[10] As such, and because it is clear the relief sought by Plaintiff arises from alleged inadequacies in the education provided to J.J., Plaintiff is required to exhaust his administrative remedies before filing this lawsuit and failure to comply requires dismissal. *See, Mangum v. Renton Schl Dist*, 20011 WL 1591177 (W.D. Wash. 2011), * 7, *Payne v. Peninsula Schl Dist.,* 653, F.3d at 875.

2. *Plaintiff's Claim for Injunctive Relief Must be Dismissed.*

It is well-established law that injunctive relief is not an independent cause of action and, in order to succeed on a request for injunctive relief, Plaintiff must first offer a valid cause of action for which

[10] *See* Ex. 1.

injunctive relief would be a remedy. *See Kendrick v. World Sav. Bank*, No. CV-15-01913-PHX-JJT, *9 (D. Ariz. Mar. 31, 2016). Accordingly, Plaintiff's Tenth Cause of Action for injunctive relief is not a proper stand-alone claim and should be dismissed. Further, because Plaintiff seeks injunctive relief for educational loss and alterations to his IEP here, and those issues are actually being adjudicated via the administrative claims process, Plaintiff should not be permitted to seek the same remedy in this case.[11]

## IV. CONCLUSION

Based on the foregoing, the moving Defendants respectfully request Pat Skorkowsky be dismissed from this Lawsuit. Additionally, as to the CCSD Defendants, Plaintiff's Third Claim for Relief (negligence), Fourth Claim for Relief (negligent hiring, training and supervision), Seventh and Eighth Claims for Relief (violation of the Fourteenth Amendment's Equal Protection Clause and Violations of Federal and State Statutes Protecting Disabled Persons), Ninth Claim for Relief (abuse of a vulnerable person), and Tenth Claim for Relief (Injunction) should be dismissed.

DATED this 13th day of June, 2019.

**GREENBERG TRAURIG, LLP**

*/s/ Kara B. Hendricks*
MARK E. FERRARIO
Nevada Bar No. 1625
KARA B. HENDRICKS
Nevada Bar No. 7743
WHITNEY L. WELCH-KIRMSE
Nevada Bar No. 12129
10845 Griffith Peak Drive, Ste. 600
Las Vegas, NV 89135

*Attorneys for Defendants Clark County School District and Pat Skorkowsky*

[11] Notably, if Plaintiff were to assert a proper IDEA claim after the completion of the administrative process, courts can look to ordinary principles of issue and claim preclusion in cases raising both IDEA and Title II claims. *See, Cf. Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290–97 (5th Cir.2005) (en banc) (holding that ADA and Section 504 claims were issue-precluded by failure of IDEA claims based on identical accessibility guidelines); *Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir.1996) (when IDEA claims are exhausted through the administrative process, "principles of issue and claim preclusion may properly be applied to short-circuit redundant claims under other laws").

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of June, 2019, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

*/s/ Andrea Flintz*
an employee of Greenberg Traurig, LLP