————2:19-cv-00965-RFB-EJY————

1        UNITED STATES DISTRICT COURT

2            DISTRICT OF NEVADA

3

4   J.W., a minor by and         )
    through his Parents,         )
5   Joshua and Britten Wahrer,   )  Case No. 2:19-cv-00965-RFB-EJY
                                 )
6            Plaintiff,          )  Las Vegas, Nevada
                                 )  April 9, 2020
7        vs.                     )
                                 )
8   CLARK COUNTY SCHOOL          )  MOTIONS TO COMPEL
    DISTRICT; PAT SKORKOWSKY,    )
9   individually and in his
    official capacity as former
10  Superintendent of Clark
    County School District;
11  MELODY CARTER, individually
    and in her capacity as
12  Plaintiff's former teacher
    of record; DOES I-X, and
13  ROE CORPORATIONS I-X,
    inclusive,
14
             Defendants.
15  _____

16
             TRANSCRIPT OF PROCEEDINGS
17
         THE HONORABLE ELAYNA J. YOUCHAH,
18         UNITED STATES MAGISTRATE JUDGE

19

20  APPEARANCES:        See Next Page

21  DIGITALLY RECORDED:   Liberty Court Recorder
                          10:30 a.m.
22

23  TRANSCRIBED BY:      PATRICIA L. GANCI
                         (702) 385-0670
24

25  Proceedings recorded by electronic sound recording, transcript
    produced by mechanical stenography and computer.

```
                          ─2:19-cv-00965-RFB-EJY─
```

 1   APPEARANCES:

 2   For the Plaintiff:

 3        **GREGG A. HUBLEY, ESQ.**
          ARIAS SANGUINETTI WANG & TORRIJOS, LLP
 4        7201 W. Lake Mead Boulevard, Suite 570
          Las Vegas, Nevada 89128
 5        (702) 789-7529

 6        **EUGENE FELDMAN, ESQ.**
          ARIAS SANGUINETTI WANG & TORRIJOS, LLP
 7        6701 Center Drive West, 14th Floor
          Los Angeles, California 90045
 8        (310) 844-9696

 9
     For Defendant Clark County School District:
10
          **KARA B. HENDRICKS, ESQ.**
11        GREENBERG TRAURIG, LLP
          10845 Griffith Peak Drive, Suite 600
12        Las Vegas, Nevada 89135
          (702) 792-3773
13

14   For Defendant Melody Carter:

15        **ROBERT O. KURTH, JR., ESQ.**
          KURTH LAW OFFICE
16        3420 North Buffalo Drive
          Las Vegas, Nevada 89129
17        (702) 438-5810

18

19

20

21

22

23

24

25

—2:19-cv-00965-RFB-EJY—

1       LAS VEGAS, NEVADA; THURSDAY, APRIL 9, 2020; 10:30 A.M.

2                             --oOo--

3                    P R O C E E D I N G S

4          COURTROOM ADMINISTRATOR:  This is the time set in the

5   case of 2:19-cv-965-RFB-EJY, Joshua Wahrer versus Clark County

6   School District.

7          Counsel, please enter your appearance for the record.

8          MR. HUBLEY:  Thank you.  Gregg Hubley for the

9   plaintiff.

10         MR. FELDMAN:  Eugene Feldman, also for the plaintiff.

11         MS. HENDRICKS:  Good morning.  Kara Hendricks on behalf

12  of the Clark County School District.

13         MR. KURTH:  Good morning.  Robert Kurth on behalf of

14  Melody Carter.

15         THE COURT:  Thank you, everyone.  This is Judge

16  Youchah.  We are here today to hear argument on, and I will be

17  issuing a ruling from the bench, at least that's my plan at this

18  time, on Documents labeled ECF Number 24 and ECF Number 31.

19  They are each motions to compel filed by the plaintiff; 24 with

20  respect to Clark County School District and 31 with respect to

21  Ms. Carter.

22         Just so you know, I have read everything.  I have

23  looked at all of the cases.  I've read all the cases.  I have

24  read the statutes.  I've looked outside of Nevada for case law

25  dealing with similar subjects, in addition to the Lumpkin case

─────2:19-cv-00965-RFB-EJY─────

1  which was cited.  I've looked elsewhere for other -- other

2  decisions that might help the Court.

3       I have a -- I think I have as good an understanding as

4  possible with respect to the Nevada statutes that exist on

5  sealing.  And as some of you on the line may know, I was a civil

6  litigator for over 25 years.  So I am extremely familiar with

7  the rules as they pertain to the scope of discovery under Rule

8  26 and under the interrogatory, document requests, RFAs, and

9  deposition rules as well as proportionality.  So I do not need

10 anybody to address those issues.  I know them very well.

11      With that said, I am happy to hear argument.  I would

12 ask you, as I know all judges do, to try to illuminate anything

13 that you think is not fully illuminated in the briefs.  I

14 probably will have some questions, but try not to simply repeat

15 the briefs because I have read them each more than once to

16 ensure that I understand fully what the arguments are.

17      So with that, who is going to be arguing for the

18 plaintiff, Mr. Feldman or Mr. Hubley?

19      MR. HUBLEY:  Your Honor, this is Gregg Hubley.  I will

20 be.

21      THE COURT:  Okay.  Please proceed, Mr. Hubley.

22      MR. HUBLEY:  Thank you, Your Honor.

23      And this is my first chance in front of you.  I wanted

24 to congratulate you on the appointment.

25      I also wanted to thank you for taking the time to

———2:19-cv-00965-RFB-EJY———

1  review the materials and hear us out on this.  From my client's

2  perspective, it's a pretty huge issue, right, that defendants

3  who admittedly have relevant and non-privileged information and

4  documents that my client doesn't have, and my client meanwhile

5  who has the burden of proof in place in the case and the primary

6  responsibility for moving this case forward has been stymied in

7  discovery by the selective use of the order to seal records ...

8  (indiscernible)

9         THE COURT:  Mr. Hubley, just I'm interrupting you

10  because you're cutting in and out a little bit.  I understand

11  people may be on cell phones.

12         MR. FELDMAN:  Your Honor?

13         THE COURT:  Yeah, I don't know what that was.

14         MR. FELDMAN:  I don't either.

15         (Zoom automated message.)

16         THE COURT:  So, Ms. Garcia, do you have any idea what

17  that is?

18         (Court conferring with courtroom administrator.)

19         THE COURT:  Yeah, you know.  I think, I don't know,

20  we -- you know, this conference should not be being recorded

21  except for by the court.  So I don't know what that just was.  I

22  apologize to everybody.  I'm going to ask everybody who has

23  called in, all four counsel, to hang up and call back in to

24  ensure that this is not being recorded outside of the court's

25  proceedings.

—————2:19-cv-00965-RFB-EJY—————

1          MR. HUBLEY:  Will do, Your Honor.

2          THE COURT:  Thank you.

3          MR. FELDMAN:  Thank you, Your Honor.

4          MS. HENDRICKS:  Thank you.

5          (Recess taken at 10:34 a.m.)

6          (Resumed at 10:55 a.m.)

7          COURTROOM ADMINISTRATOR:  The Court recalls the case of

8    2:19-cv-1965-RFB-EJY, Joshua Wahrer versus Clark County School

9    District.

10          Counsel, please enter your appearance for the record.

11          MR. HUBLEY:  Gregg Hubley for the plaintiff.

12          MR. FELDMAN:  Eugene Feldman for the plaintiff.

13          MS. HENDRICKS:  Kara Hendricks on behalf of the Clark

14   County School District.

15          MR. KURTH:  Robert Kurth on behalf of Melody Carter.

16          THE COURT:  Thank you everyone for your patience with

17   that process.  This is Judge Youchah.

18          I will make my preliminary remarks again so that this

19   record is complete.  I have reviewed all of the briefs with

20   respect to ECF Number 24, which is the motion to compel

21   discovery from Clark County School District, and ECF Number 31,

22   which is the motion to compel discovery from Defendant Melody

23   Carter.  I have reviewed the responses, the replies, the

24   exhibits, and the case law cited as well as having searched

25   nationwide for case law that might illuminate the issues and

—————2:19-cv-00965-RFB-EJY—————

1    help the Court determine the best course of action here.

2          Because I have read everything so thoroughly and, as

3    stated, in some cases more than once to ensure I have not missed

4    anything, I would ask that you try to limit your arguments to

5    issues that are not fully illuminated in the briefs, since I

6    really do understand -- I'm quite confident that I do understand

7    all of the objections that have been raised by the defendants

8    and all of the arguments raised by plaintiff.

9          With that, Mr. Hubley, you had previously indicated you

10   would be arguing these motions, which is fine with the Court.

11   And I would ask you to proceed.

12         When you speak about -- I would just distinguish, I

13   think better said, between your argument, to the extent there is

14   any, as it relates to CCSD, Clark County School District, and

15   Ms. Carter.  Thank you.  Go ahead.

16         MR. HUBLEY:  Thank you, Your Honor.  And thanks again

17   for hearing us out on this.

18         Again, as I was saying, it's a big issue to my client,

19   and she -- our client of course has the burden of proof and has

20   the primary responsibility for driving this thing forward.  And

21   as you know, we're at a point where it's our position that we've

22   been stymied in our discovery efforts because of the collective

23   use of this order to seal.

24         So, from our perspective, Your Honor, it is a situation

25   of information disadvantage, and it's one in which the defense

—2:19-cv-00965-RFB-EJY—

1    is actively using the withheld documents, like witness

2    statements for example, to prepare witnesses while my client's

3    prevented from even seeing the information contained in the

4    documents.

5          And I think, Your Honor, there was some confusion at

6    the hearing on the School District's motion to dismiss before

7    Judge Boulware about the scope of the positions taken, and I

8    want to start by framing those.  And specifically with

9    Ms. Carter on December 31st, 2019, her counsel said in writing

10   that she would not, quote, answer any questions about the issues

11   related to this case on the basis of the order to seal until the

12   Federal Court rules on the pending motion to compel.

13         And I'd ask the Court, Your Honor, to bear in mind here

14   that the School District admitted, conceded, and stipulated to

15   the May 2nd, 2018, beating by Ms. Carter in the IDEA proceeding.

16         So on the other hand, then, we've got Ms. Carter who

17   denies the very same allegations, Your Honor, that the School

18   District conceded about her, and she says in the next breath

19   that despite the different position she doesn't have to answer

20   any questions to support her denial.  And, in fact, Your Honor,

21   to this day she refuses to provide anything in the way of

22   discovery, even if it's unrelated to the felony child abuse

23   charges of the May 2nd beating.  She still refuses to even

24   identify witnesses to the incident, Your Honor, or provide a

25   description of her employment background.

─────2:19-cv-00965-RFB-EJY─────

1          CCSD's position, the District's position, as I

2  understand it, Your Honor, is just that it won't provide any

3  information or documents that it has determined are related to

4  the charges and investigation -- charges against and

5  investigation of Ms. Carter and that they're doing that based

6  upon the order to seal.

7          And finally, I think, Your Honor, the timing of this

8  order to seal, which I discussed in the reply to Ms. Carter's

9  opposition, the timing of that is pretty telling.  Remember, the

10  School District had been served with the order to seal in

11  February 2019.  We know that because we've got the certificate

12  of service from the Court.  So by the time of the April 2019

13  IDEA hearing, the School District still hadn't disclosed this

14  order.  And, in fact, it waited, Your Honor, until October 31st

15  of 2019 to do so.  And it waited even later to advise the

16  plaintiff that it had secured these other alleged pointer sticks

17  that Ms. Carter had and that it had been holding them in a

18  principal's office.

19          And, Your Honor, this untimely disclosure about these

20  sticks just leads to more questions and emphasizes even more to

21  us the need to put the parties on an equal playing field.

22          As I pointed out in the reply, the arrest records that

23  were obtained at the time of this IDEA hearing indicate that the

24  stick that was used to beat our client, that was broken over our

25  client's body, was a wooden stick with a rubber hand on the end.

—2:19-cv-00965-RFB-EJY—

1  But the pointer sticks, the sticks with pointing fingers on the

2  end that were produced by CCSD, were plastic.

3       And this isn't a trivial difference here.  It's the --

4  the investigating officers say this was a wooden stick.  And

5  it's -- you know, the wood is of a certain diameter versus a

6  hard plastic.  One of them is going to break over a child's body

7  easier than the other.

8       But it's this sort of inconsistency and ambiguity,

9  frankly, that we have that we can't get to the bottom of because

10  the defense won't provide the information.

11       So, Your Honor, that's where we're at factually.  And

12  as we point out, the Court, and as you know, has extreme broad

13  discretion to control its dockets, the cases, and specifically

14  discovery disputes.  And we've also got Rule 12 and 26(b) which

15  only allows relevant, non-privileged discovery to be limited if

16  it's unreasonably cumulative or can be obtained more

17  conveniently elsewhere or if the party seeking it sat on its

18  butt and not done anything to get the discovery.

19       But here, notably, Your Honor, we do have an area where

20  there is no disagreement.  Here, defendant disputes that the

21  information allegedly covered by the order to seal is relevant.

22  And neither defendant argues that there's a privilege that

23  attaches.

24       Instead, we got the School District that says this

25  Court lacks jurisdiction because the Las Vegas Justice Court

—2:19-cv-00965-RFB-EJY—

1  signed the order to seal.  Therefore, by the District's

2  rationale, the Federal Court can't order the parties to provide

3  discovery subject to that order due to this conflict.

4       I think it's important to remember, Your Honor, both

5  that the Las Vegas Justice Court is a court of limited

6  jurisdiction and that the statute on which the order to seal is

7  based is a statute with a limited purpose.  And I think it's

8  also important to remember the supremacy clause which is

9  something that Judge Boulware mentioned during the hearing on

10 the motion to dismiss, and which makes this limited jurisdiction

11 order, quote, give way, end quote, at least to the extent that

12 it conflicts with the rights of the parties before this.

13      I would also note, Your Honor, some State standards,

14 some Nevada standards.  There's a volume of case law that

15 discusses the legislative history of NRS 179.  And it's crystal

16 clear, Your Honor, that it was passed to enable persons

17 convicted of crimes to obtain an order to seal so that they're

18 more likely to be able to get a job in the future and not be on

19 any kind of Public Assistance.

20      And Nevada cautioned at the time then.  I quoted that.

21 It said this statute doesn't erase history.  It doesn't change

22 what happened.

23      So, Your Honor, there's nothing in the legislative

24 history that even suggests that a person can obtain an order to

25 seal records that they can later use to prevent access to

─2:19-cv-00965-RFB-EJY─

1  information if they are sued for the same behavior that gave

2  rise to the criminal charges.  There's nothing in the statute

3  that says that.  And allowing the defendants to use this order

4  to seal as a sword and a shield in this civil case would,

5  frankly, be a bastardization I think of the intention of the

6  statute.

7         Also note, Your Honor, that the case law that the

8  defendants offer from -- in my opinion incredibly

9  distinguishable.  Not one of the cases they've cited seems to

10 have premised that a person or a state agency can withhold

11 relevant documents and conceal information in a civil suit

12 that's all been based upon the same conduct that led to the

13 criminal charges.  None of those cases say that.  U.S. versus

14 Olson and Lockerby, (phonetic) Eighth Judicial District, both

15 involved the prosecuting agency trying to get records to use to

16 prosecute the defendant for a crime or to impeach the defendant

17 based upon a prior crime.

18        And, Your Honor, I'm nowhere near trying to introduce

19 evidence here.  I'm not talking about offering her conviction

20 into evidence or to try to impeach her.  This is not at all what

21 I'm attempting to do.  We're trying to get information about

22 this beating, the aftermath, and about Ms. Carter so that we can

23 prove up our case.

24        The last thing that I would note, Your Honor, and

25 I'll -- it has been briefed so I'm not going to spend that much

—2:19-cv-00965-RFB-EJY—

1  time on it.  I do think that it's improper for Ms. Carter and

2  CCSD to use the order in this capacity because they're not

3  criminal state agencies, and I don't think that it applies to

4  them.

5         And at the end of the day this is where we're at, Your

6  Honor.  If we can't get the information that's in the hands of

7  the defendants, which is again admittedly relevant and not

8  protected by privilege, then my client is operating at a severe

9  information disadvantage in this case.  He will not receive a

10 fair trial, and I think that he will have had his rights

11 violated again.

12        And with that, I'll submit it, Your Honor.

13        THE COURT:  Thank you, Mr. Hubley.

14        I don't know.  Does -- does -- Ms. Hendricks or

15 Mr. Kurth, who is going to go first?

16        MS. HENDRICKS:  I'll go first, if that's all right,

17 Your Honor.

18        THE COURT:  Thank you.

19        MS. HENDRICKS:  Ms. Hendricks.

20        THE COURT:  Go ahead.

21        MS. HENDRICKS:  And I think there's -- thank you.

22        A couple of points that I want to address that I think

23 it's important to clear up the record.  I was not counsel as

24 part of the due process proceedings.  We're not here --

25        THE COURT:  Ms. Hendricks, Ms. Hendricks.

———2:19-cv-00965-RFB-EJY———

1          MS. HENDRICKS:  -- to talk about stipulations related

2    to that.

3          THE COURT:  Ms. Hendricks, Ms. Hendricks, I do not want

4    to hear anything about what you and what anybody and Mr. Hubley

5    allegedly agreed to.  It is not important to this decision.

6          MS. HENDRICKS:  Perfect.

7          THE COURT:  Move onto the substance.

8          MS. HENDRICKS:  Will do.  I just wanted to address

9    that.

10          I think that the most important issue here from our

11   perspective is we have an order that specifically calls out the

12   Clark County School District and the Clark County School

13   District Police Department and specifically indicates that they

14   are to seal records in their custody which relate to the matter

15   contained in this order, and that relates specifically to

16   Ms. Carter's arrest.

17          When you look at the initial motion that was filed,

18   plaintiffs initially conceded that CCSD was substantially

19   justified in the refusal to produce these documents.  What I'm

20   really trying to do here, Your Honor, is to protect my client,

21   make sure we're not going to be in a position where we're

22   violating a State Court order, and have concerns that we have

23   laid out in our briefs regarding that.  And I appreciate that

24   you have reviewed the briefs and the authority.

25          One of the things that stood out to me as I was

—————2:19-cv-00965-RFB-EJY—————

1   preparing for this hearing today is the language in NRS 179.301

2   which does indicate that when records are sealed -- when

3   criminal records are sealed, that there are certain entities

4   that can request access to and inquire into those records.  They

5   reference the Gaming Board, the Insurance Commissioner, those

6   types of things.

7          Certainly the legislature could have indicated that a

8   litigant in a civil lawsuit would have access to the records.

9   It does not say that anywhere in the statute.  And our biggest

10   concern is to -- again, protecting the client.

11          You stated initially that you intended to issue an oral

12   ruling.  If by chance that you decide to compel the production

13   of the documents, we would request a written order be issued

14   because I will need to provide that to both the School District

15   and the Police Department just to protect them from any future

16   issues that could be related to this.

17          And, you know, I agree with Mr. Hubley in the sense

18   that there's not a lot of case law that's directly on point and

19   was pleased to hear Your Honor's perspective after doing some

20   additional research on this issue.  Because it is an odd issue

21   where you have a State Court and a Justice Court here that has

22   specifically said these records are to be sealed, and plaintiffs

23   saying, "Well, now we want them for discovery and they're

24   relevant."

25          What I was referring to personally was the order that

1  Judge Ferenbach issued and that Judge Gordon affirmed in this

2  district that specifically indicated that --

3          THE COURT:  Ms. Hendricks, that order has nothing to do

4  with this.  Those were two criminal justice agencies that are

5  directly related or identified in 179.030.  You have the

6  Attorney General's Office and the FBI, the FBI looking for

7  records from the Attorney General's Office that directly related

8  to the plea of a person, a plea of an individual, disposition of

9  a criminal case, also identified as a record of criminal

10 history.  That case is not applicable here, although the

11 concepts of supremacy, comity, and abstention certainly are.

12          But you don't need to discuss that order because it

13 is -- the Court has already read it and reread it and is

14 confident that that order is a properly decided -- it's properly

15 decided, but it's decided expressly under the language of

16 179. -- 179A.030 and 179.070 which I have sitting before me.  So

17 it is not applicable here.

18          Perhaps, there's another case you'd like to argue.

19          MS. HENDRICKS:  Well, and where I was really going with

20 that, Your Honor, understanding the distinctions that you've

21 referenced, is that when we look at -- excuse me -- the

22 supremacy clause, how that works into this and this Court's

23 authority to make a decision after looking at that State Court

24 order that tells us to produce the documents -- and, again, that

25 ... (indiscernible) ... that were protected ... (indiscernible)

2:19-cv-00965-RFB-EJY

1    ... I believe that you have the authority to order those

2    produced, then that's what we'll do, Your Honor.  But we just --

3    you know, when you have a specific court order where your client

4    is specifically set out and said these documents are sealed, we

5    can't be too cautious.  We certainly don't want to violate any

6    court orders as we move forward and, in fact, what I would

7    argue --

8          THE COURT:  Ms. Hendricks, let me ask you a question

9    here.  You can't be too careful and I understand that.  I was

10   defense counsel for almost my entire career, and I understand

11   the desire not to violate a court order whether it's Justice

12   Court or, frankly, Small Claims Court.  We are not -- lawyers

13   are not in the habit of violating court orders or advising our

14   clients to do so, and I appreciate that.

15         And I understand that that is the motive behind the

16   refusal or disagreement here, is a better word, disagreement.

17   But when I look at 179A.03 -- 070, it says -- it defines

18   criminal history records.  And then there's a Section (2) where

19   it says records of criminal history do not include.  And among

20   those are Section (b), information concerning juveniles; Section

21   (j), records which originated in an agency other than an agency

22   of criminal justice in the state, and of course Subsection (a),

23   which is a little -- perhaps, a little less clear on its face,

24   investigative or intelligence information, reports of crime, or

25   other information concerning specific persons collected in the

1   course of the enforcement of criminal laws.

2          So if those are not criminal history records -- and I

3   hope you would agree that Clark County School District, separate

4   from the Clark County School District Police Department, two

5   different things, the Clark County School District is not an

6   agency of criminal justice.

7          Why doesn't -- why don't the exceptions to the records

8   of criminal history apply to the Clark County School District

9   with respect to, for example, the principal's records?  Those

10  records did not originate in an agency of criminal justice.

11  They pertain to a juvenile, and it's an investigate -- it's

12  investigative information related to the report of a crime, the

13  witness who reported the hitting of Mr. -- of the plaintiff by

14  Ms. Carter, and other information that was collected by

15  Ms. Schumm in the course of her investigation.

16         I do not understand why on the face -- the plain face

17  of this language Ms. Schumm's investigative file would not be

18  discoverable given that it is not a record of criminal history.

19  She is not acting as part of an agency of criminal justice.

20  And, therefore, the sealing order could not as a matter of law

21  reach her.

22         MS. HENDRICKS:  And I guess my response to that would

23  be -- would be referring back specifically to the Justice Court

24  order which specifically identified not only the School District

25  Police Department, but also the School District itself and the

—2:19-cv-00965-RFB-EJY—

1  records department.  Those records would relate to, like you

2  said, the reporting of the incident, the police being called.  I

3  understand the distinction that you are referencing of -- to the

4  School District not being a -- a criminal entity, and I agree

5  with you on that.

6        And our concern is the order that was issued not just

7  to the Police Department, but also to the School District that

8  says specifically that matters which relate to -- and it's very

9  broad in the Justice Court order -- matters relate to the

10 matters in this order that are sealed.  And those documents,

11 because they relate to the incidents from which Ms. Carter was

12 arrested, that's how I guess our -- we interpret the Justice

13 Court order.

14        THE COURT:  Okay.  I understand that and, perhaps,

15 that's a cautious position to take, but I don't believe the

16 Justice Court can issue an order outside of the confines of what

17 the statutes give it authority to order.  And I don't think the

18 Justice Court can order records sealed that are not sealable by

19 statute.  So that's -- and I -- you know, I've never been a

20 Justice Court judge.  I don't know what analysis was done before

21 this order was put together.  I suspect a lot of it is boiler

22 plate because they are overwhelmed in their responsibilities and

23 don't have the resources that the Federal Courts have, and I

24 appreciate that.

25        So with your -- with your concurrence that CCSD itself

—2:19-cv-00965-RFB-EJY—

1  is not an agency of criminal justice, I think that resolves a

2  lot of issues with respect to CCSD for this Court and the

3  confidence this Court has in the order it intends to make with

4  respect to CCSD, and not with respect to the Clark County School

5  District Police Department.  Those are distinct in the Court --

6  in this Court's mind.

7          So with that, if you -- if there's more you want to

8  present to the Court, I'm happy to listen.

9          MS. HENDRICKS:  No, and I -- I appreciate that

10  distinction, and I think really that's the biggest reason we're

11  here is to get some clarity.

12          I was not a part of the original Justice Court order.

13  I have no idea what went into it or what analysis was done or

14  what was even presented to the Court.  So we're just doing our

15  best to interpret it and to move forward.

16          Really I don't have any other -- anything other

17  specific to add, Your Honor.  Obviously you're very familiar

18  with the issues that have been presented.  And I just need to

19  make sure I'm doing my due diligence to protect my clients as we

20  move forward.

21          THE COURT:  Certainly.  Fair enough.  And I understand

22  that.  I appreciate that.

23          All right.  Counsel for Ms. Carter?

24          MR. KURTH:  Good morning, Judge.  Robert Kurth.

25          Judge, I just -- I guess I have the convenience or --

—2:19-cv-00965-RFB-EJY—

1   let me refer to the statute that you just referred to quickly

2   since I have the convenience since we're here that I can try to

3   pull it up quick.  Because I wasn't prepared to --

4          THE COURT:  Which statute?  I can read it into the

5   record for you.  Which statute?  030 or 070?

6          MR. KURTH:  179A.070.  I do see it.  I have -- I pulled

7   it up quick so I could look at it.  And I can see -- and I just

8   want to respond on that, on that part of --

9          THE COURT:  Well, before -- before you respond to any

10  of that, would you agree with me, Mr. Kurth, that Ms. Carter is

11  not an agency of criminal justice?

12         MR. KURTH:  She's not an agent -- yes, I mean, I don't

13  think --

14         THE COURT:  Okay.

15         MR. KURTH:  -- she actually could be an agent.

16         THE COURT:  Okay.  So if she's not an agency of

17  criminal justice, then any records in her possession that did

18  not originate in an agency of criminal justice would not be

19  sealable records pursuant to 179A.070.  Would you agree with

20  that?  Any records, let's start with that.

21         And you don't have to --

22         MR. KURTH:  I --

23         THE COURT:  You don't have to agree with me.  You can

24  say you don't know because I understand the position you're in.

25  But it's the Court's position that anything that originated with

———2:19-cv-00965-RFB-EJY———

1  her, that did not originate with an agency of criminal justice,

2  could not be protected by a sealing order because the Justice

3  Court can't seal records that are not records of an agency of

4  criminal justice or records of criminal history.  And records of

5  criminal history are -- is the broadest definition we have here

6  because, clearly, Ms. Carter and CCSD are not agencies of

7  criminal justice.

8          And so the question is whether records in Ms. -- in

9  Ms. Carter's possession that are not -- did not originate with

10  an agency of criminal justice, so something other than the CCSD

11  or Las Vegas Metropolitan -- I'm sorry -- CCSD Police Department

12  or the Las Vegas Metropolitan Police Department, anything that's

13  in her possession that did not originate with them would fall

14  outside of the definition of records of criminal history.  And

15  if you disagree, please -- please explain why.

16          MR. KURTH:  Thank you.  Thank you, Judge.

17          I do -- I understand.  I agree partially and I

18  disagree.  And let me explain my agreement and let me explain

19  my -- I've been practicing for, you know, a substantial number

20  of years here, too, seven, eight years.  And I do criminal and

21  civil law.  And let me just say something about this criminal

22  sealing.  Although I did not do this, basically when a case is

23  in Justice Court and a case falls in the Justice Court, the

24  Justice Court only has jurisdiction over a misdemeanor case.  So

25  I think that's an important thing to point out that -- that

—2:19-cv-00965-RFB-EJY—

1  whatever was done and whatever was sealed was a misdemeanor, no

2  contest plea, right, condition.

3       Once it's sealed, the Justice Court has the

4  jurisdiction to do that because it's happened in the Justice

5  Court.  The Eighth Judicial District Court -- they very well

6  could have just filed it in the Eighth Judicial.  Eighth

7  Judicial District Court would have seal it, too.  Whether or not

8  that makes a difference, still warrants us to look at it as the

9  Justice Court is, you know -- of course, it's limited in its

10  jurisdiction.  In criminal cases they handle misdemeanors to a

11  trial and they handle preliminary hearings for gross misdemeanor

12  and felonies that are charges.  And then if they get bound over,

13  they get bound up to the District Court for a decision.

14       When you look at this, I think you have to read the

15  statute that you're referring to about these -- these agencies

16  in light of NRS 179.285.  And the biggest thing on this one is I

17  think when you read that statute, it says:  "All proceedings

18  recounted in the record are deemed never to have occurred."  So

19  that's -- "and the person to whom the order" --

20       THE COURT:  So is it your position --

21       MR. KURTH:  -- "may properly answer" --

22       THE COURT:  Is it your position, Mr. Kurth --

23       MR. KURTH:  The main part is that last part.

24       THE COURT:  Is it your position, Mr. Kurth, that the

25  public policy of the State of Nevada is to shield a criminal --

1   somebody who's been convicted of a crime, whether it's a

2   misdemeanor or felony, who has subsequently been able to seal

3   those records?  Let's set aside Ms. Carter.  Let's set aside

4   this particular event and say, do you believe that it was the

5   policy underlying these statutes based on the stated public

6   policy of the statutes, right, we know that because the Court

7   put that in 179.2405 -- .2405 that it was the policy to shield

8   somebody who has a sealed criminal record from ever having to

9   disclose or discuss that -- that event in a civil proceeding?

10          So if we had, for example, and I'm going to use this on

11  purpose, O.J. Simpson before us, and he had been charged in

12  Nevada instead of California and had subsequently been able to

13  seal that criminal record.  When the Goldmans and Nicole

14  Simpson's family sued him, he would not have had to answer any

15  questions about the criminal proceeding because it would have

16  been sealed?  That cannot possibly be the policy of the State of

17  Nevada.

18          What would be sealed would be the pre-plea

19  negotiations, anything said on the record about the event,

20  anything -- I mean, records of the -- that were submitted in

21  support of the plea and plea agreement, the charging document,

22  any evidence if it were filed.  That would all be sealed.  I

23  agree with that.

24          And Ms. Carter's nolle plea, not admissible unless

25  plaintiffs go and get the order unsealed.  The sentence, if

1   there was one, I don't even know, sealed.  They have to get that

2   unsealed by the -- they have to go to the Justice Court first,

3   and I will give you my opinion on what we can do after that.

4        But I cannot believe that the State of Nevada intended,

5   especially given its stated intent, to shield somebody who has

6   been convicted of a crime from having to answer any questions,

7   facts, facts, about that crime simply because the criminal

8   record has been sealed.

9        Now, tell me why I'm wrong.

10       MR. KURTH:  I -- well, I think that's a -- I think that

11  example doesn't apply, but I can see how you can make that.  And

12  whatever happened in California, I don't know.  Whatever their

13  laws are, I'm not familiar with.  But as you said, in Nevada, I

14  do believe that's -- I wouldn't say -- use the word "shield,"

15  but I do think it's the public policy of the State of Nevada

16  not, you know, not have it be prejudiced against them -- just

17  because they entered a nolle plea and have their conviction

18  sealed, that they should not be prejudiced against them for

19  anything arising out of that or whatever happened to it.

20       And specifically in the statute it says:  "In the

21  event" -- which is -- this is very important.  "In the event and

22  proceedings relating to the arrest, conviction, dismissal, or

23  acquittal."  And that's the investigation.  That's the police

24  report.  That's -- now, that investigation and the police

25  report, those were done by the criminal agencies so those were

1  sealed.

2        Now, if those records were sealed and they're brought

3  somewhere else, that can't be disclosed either just because

4  somebody got a copy of it before -- before the agency sealed

5  them.

6        THE COURT:  But you have taken the position on behalf

7  of your client that she doesn't have to answer any question.  I

8  mean, she was in a court -- she was in a classroom on a

9  particular day in May with students.  Something happened in that

10 classroom to a juvenile.  And the facts originate outside a

11 criminal investigation.  This is not the FBI going out and doing

12 its business, doing what it's charged to do, by surreptitiously

13 investigating criminal activity that has been sealed by the

14 Court and a warrant that may subsequently be unsealed, but is

15 sealed in a warrant, is sealed in a criminal complaint, is

16 sealed in an indictment.  Believe me, I'm familiar with all of

17 those.  I deal with them all the time, right.  I get that.

18       This is an event that happened in a classroom to a

19 five-year-old.  Whatever happened isn't sealed.  You -- you are

20 taking the position despite 179A.070 which talks about what

21 isn't a record of criminal history.  So we can't read one

22 statute all by itself.  We have to read the statutes together,

23 right.  That's what the Nevada Supreme Court repeatedly tells

24 us.  You have to read the entire chapters and statutes together

25 so that they are read in harmony with one another.

1           And when we read 285 in light of 179A.030 and 070,

2    these -- 030 and 070 are specific and are clearly glossing what

3    is sealed and unsealed.  To the extent you want to argue they

4    are inconsistent, take that up with the Nevada Supreme Court.

5    My job is to interpret the statutes as best I can.

6           And I think that 070 and 030 are pretty plain on their

7    face, but to the extent they're not, the decision in -- and I

8    wish I knew how to say this person's name -- Baliotis,

9    B-A-L-I-O-T-I-S.

10           MR. HUBLEY:  That is a tough one.

11           THE COURT:  Yes, it is.  It's harder then Neutron.

12           It says quite clearly that the legislative history of

13    179, doesn't say 179A, 179.245 through 0 -- 301, indicates that

14    sealing statutes were enacted to remove ex-convicts' criminal

15    record from public scrutiny and to allow convicted persons to

16    lawfully advise prospective employers that they have no criminal

17    arrests and convictions with respect to sealed events.  That's

18    what the Nevada Supreme Court told us in 1986.

19           That Court clearly confirms what has been said

20    elsewhere, which is that there is nothing about these statutes.

21    If they had wanted to prevent the use of this in a civil

22    proceeding, they could certainly have said that, but they

23    didn't.

24           MR. KURTH:  I think -- and, Judge, respectfully, when

25    you referred to NRS 179A.070, that's talking about records of

————2:19-cv-00965-RFB-EJY————

1  criminal history that the criminal repository maintains.  The

2  criminal repository is where you send it up and you get a

3  record.  When you're receiving someone's conviction, you send it

4  up.  You say, "Okay.  What's everything you have here from the

5  fugitive warrant and traffic citations?  Anything else, I'm

6  going to seal those, too."

7          That's -- that's -- that statute, history's saying

8  what?  The information -- obtain the records collected and

9  maintained by the agency of criminal justice.  Later on it talks

10  about ...

11          Right.  Information that they obtained as far as

12  indictments or informations or other criminal charges, criminal

13  charges, dispositions of charges, dismissals, acquittals,

14  convictions, sentences, you know, that information.  Now, when

15  it's talking about juvenile in this, we're talking about the

16  juvenile like the juvenile justice system.  Because it -- they

17  they're not talking about that it pertains to a juvenile who may

18  have been an alleged victim.  We're talking about the juvenile

19  justice system where the juvenile system you admit or you deny

20  guilt.  You don't -- you don't -- it's not a guilty or a not

21  guilty type of deal, right.  That's a rehabilitation and things

22  like that.  So I just want to point that out, that that's the

23  difference there.

24          I do think that -- when we look at these essays that

25  are posed, I think we should look at that, too, and read the ...

1  (indiscernible) ... in light of the state -- Nevada State law

2  concerning admission of nolle pleas and read that in line with

3  the Federal Rules of Evidence --

4          THE COURT:  We are not talking about admissibility at

5  trial.  We are talking about discovery and discovery --

6          MR. KURTH:  I get that.

7          THE COURT:  Right.

8          MR. KURTH:  What we're talking about is the discovery

9  questions all specifically refer to a 5/2/18 incident, and then

10  they define it.  And basically by answering any of those

11  questions, they're, like, requiring somebody to admit that this

12  event occurred.  And then there's inflammatory and prejudicial

13  statements about beating and things.  You know, that's all an

14  accusation.

15          Anyway --

16          THE COURT:  Mr. Kurth --

17          MR. KURTH:  -- I know we're talking about discovery,

18  but --

19          THE COURT:  -- your client has -- your client has

20  pled -- entered a nolle plea which is not discoverable in my --

21  in -- and I will explain that in my oral order.  And your

22  client's -- the sentence, if there was one, whatever it was,

23  again, not discoverable.  The plea negotiations, not

24  discoverable.  Las Vegas Police Department records, not

25  discoverable.  Clark County School District Police Department

1 records, not discoverable.  All of that is not discoverable

2 absent a -- an order unsealing, or if the Justice Court refuses

3 to unseal, then I will invite plaintiffs to come back to this

4 Court to examine the supremacy issue and we will do so.

5        But with respect to records that did not originate with

6 criminal justice -- with the criminal -- with an agency of

7 criminal justice, I disagree.  And I don't believe that there's

8 anything about the legislative history, the -- the language of

9 179.285 that suggests that a person who has entered a plea and

10 subsequently had that -- that criminal record sealed is given a

11 blanket of protection for civil proceedings.  There's just

12 nothing that supports that.  There's no case law anywhere in the

13 country that suggests that.  At most, there are states, and I

14 actually only found one, that have specific rules about

15 unsealing records for purposes of civil proceedings, and you

16 have to go back to the original court to do that.  But our

17 records -- our court -- excuse me.  Our statutes do not say

18 that.  They simply tell us what's sealed and unsealed.

19        And I looked very carefully multiple times at 179.285

20 and the language, and specifically the language that says:  "And

21 the events and proceedings relating to the arrest, conviction,

22 dismissal, or acquittal."  And I have to interpret that as

23 the -- easy with the proceedings.  Any court proceedings, any

24 proceedings with law enforcement agency, clearly.  But I don't

25 believe that that reaches an administrative review by Clark

1  County School District.  There's just nothing that supports

2  that.

3           With respect to events, that's a harder word, but then

4  I go to the -- to the legislative intent behind these statutes

5  as stated by the -- by the Supreme Court.  And it's pretty clear

6  in Baliotis, again I'll spell it for the record,

7  B-A-L-I-O-T-I-S, versus Clark County, 1986 Supreme Court

8  decision cited at 729 P.2d 1338, that -- that the statute -- and

9  this is what -- what the -- I'm quoting now:  "The statute was

10  enacted to enhance employment and other opportunities for such

11  formerly convicted persons."  That is a quote.

12           It does not say anything about civil proceedings.  And

13  then later on in the order it says, quote, It is clear, however,

14  that such authorized disavowals cannot erase history nor can

15  enforce -- nor can they force persons who are aware of an

16  individual's criminal record to disregard independent facts

17  known to them.  And later in the order it says:  "It is one

18  thing to recognize and give effect to the benefits that inhere

19  to the sealing statute.  It is quite another to suppose that the

20  statute can force licensing authorities to simply disregard

21  independent knowledge of criminal behavior."

22           And I would replace -- that's the end of the quote.

23  And I would replace "licensing authorities" with "Clark County

24  School District" since it's not an agency of criminal justice.

25           And in that case we were talking about -- in the

1   Baliotis case they were talking about the Las Vegas Metropolitan

2   Police Department, and they were indicating they could not be --

3   their independent knowledge could not be -- was not sealed.  I

4   think this is pretty clear, pretty clear, not -- not abundantly

5   clear, but pretty clear on what the Court intended here, what

6   the statutes here intended.

7        Now, I will stop talking for a minute.  I'll let you

8   make your record, and then I will issue my order.  Go ahead.

9        Mr. Kurth.

10       MR. KURTH:  Robert Kurth.  And thank you, Judge.  I

11  appreciate that.

12       I just want to -- it sounds like you're going to

13  differentiate exactly between whatever was with the School

14  District that maybe they have to their own internal processes.

15  But the CCSD report from the CCSD police directly related to

16  either an arrest, conviction, dismissal, or acquittal, and we

17  don't think that would be.  And it sounds like -- and they're a

18  governmental agency.  You know, they're not an arm of the CCSD.

19       As far as -- the only thing else I would state is,

20  what's bothersome to me is whether or not this can decide to

21  force somebody to try to agree or admit or -- to this event that

22  arise out of the same -- out of the criminal that was here.

23  Whether -- Ms. Carter isn't required to answer anything

24  concerning that.

25       So, I mean, I would just ask that that be dealt with

1  because I don't think it's specifically related to that and have

2  to only answer to an employment inquiry.  And that even the

3  attaching of this -- the complaint to the -- the initial

4  complaint -- and this is improper and unauthorized, whatever

5  that was obtained from, definitely an agency where it was

6  sealed.  And I would leave it at that.  Thank you.

7          THE COURT:  Thank you.

8          MR. HUBLEY:  Would you like me to chime in on that,

9  Your Honor, where and when I obtained that or ...

10          THE COURT:  Nope.

11          MR. HUBLEY:  This is Gregg Hubley.

12          THE COURT:  No, thank you.

13          MR. HUBLEY:  Fair enough.  Thank you.

14          THE COURT:  First, the Court notes that it does have

15  jurisdiction to interpret and apply Nevada law.  Federal Courts

16  do this all the time, and that's what's happening in this case.

17  There's absolutely nothing unique about this case that stops the

18  Federal Court from interpreting any NRS, Nevada Revised Statute

19  that is, section irrespective of what it pertains to.

20          The Court also finds that the decisions in Walker,

21  which is Walker versus District Court, 101 P.3d 787, and Yllsa

22  is how I'll say it, Y-L-L-S-A, versus State, 920 P.2d 1003, are

23  distinguishable.  The defendants' interpretation of Walker is

24  overbroad.  Neither of these cases address the definition of an

25  agency of criminal justice under 179A.030 or the definitions of

1   records, criminal history, under 179.070.  They dealt expressly

2   with two statutes that are not at issue in this case and have

3   not been raised by any of the parties in this case.  And I do

4   not believe that these -- while the decisions are illuminating,

5   they are not terribly illuminating for the Court's decision

6   here.

7         The stealing -- the sealing order cannot -- by the

8   Justice Court cannot reach an entity or subject matters that do

9   not fall within the definitions of what may be sealed.  A

10  sealing order cannot reach records that arise or knowledge that

11  arises independent of a criminal justice agency.  And Baliotis,

12  the case that I have repeatedly cited, says that quite clearly

13  in its language when it indicates that:  Memories cannot be

14  erased.  Information that is obtained independent of a criminal

15  justice investigation cannot be erased and is usable even by a

16  criminal justice agency in that case.

17        179.0 -- excuse me.  179.301 which allows certain

18  persons to inspect sealed records would not apply to an agency

19  other than an agency of criminal justice and/or to receive

20  records that are not records of criminal history.  In other

21  words, 301 can't protect an administrative investigation done by

22  the Clark County School District.  And I am distinguishing

23  between the Clark County School District and the Clark County

24  School District Police Department.

25        So I'm specifically speaking about the Clark County

1 School District.

2        Lumpkin, to which CCSD cites, found the records at

3 issue were clearly criminal records, different than what we're

4 going to -- what the Court's going to order here, and stated in

5 its conclusion that should the State Court refuse to unseal the

6 materials for the ultimate purpose associated with that case,

7 Federal -- Federal law is of course supreme to which conflicting

8 State law and policy must yield.  That does not differ between

9 Colorado and Nevada.

10        Turning back to NRS 179A.030 and 070, the Court notes

11 that well settled law states that statutes should be given their

12 plain meaning when a statute is clear on its face, and courts

13 may not go beyond the statute's language to consider legislative

14 intent when the meaning is clear.  That's found in Pellegrini

15 versus State at 117 Nev. 860, a Nevada Supreme Court decision.

16        Here, I believe 179 -- 179A.030 is clear on its face.

17 Clark County School District and Melody Carter are not agencies

18 of criminal justice, and their knowledge and their records that

19 are independent of an agency of criminal justice cannot be

20 sealed.  But if they have records that originated in an agency

21 of criminal justice, they don't necessarily become discoverable

22 simply because they are held by Ms. Carter or Ms. -- or the

23 Clark County School District.  Although, I did find a California

24 Supreme Court -- I'm sorry -- California Federal Court decision

25 that did make that distinction which I thought was quite

—2:19-cv-00965-RFB-EJY—

1   interesting, but I will not order that at this time.

2         So given that the Clark County School District is not

3   an agency of criminal justice and it does not perform a function

4   in the administration of criminal justice and a substantial

5   portion of its budget is not dedicated to the administration of

6   criminal justice, and Ms. Carter is not an agency of criminal

7   justice, and the Clark County School District Police Department

8   is an agency of criminal justice, the Court can compel Clark

9   County School District and Ms. Carter to produce documents that

10  respond to requests for production, respond to requests for

11  administration -- excuse me -- requests for admissions, and

12  interrogatories when the information is independent of any

13  information that originated with a criminal justice agency.

14        The Court notes that the objection to Ms. Carter's

15  being able to speak about anything that relates to the events

16  that involve this plaintiff is clearly overruled.  It is not

17  overruled to the extent that it pertains directly to the

18  criminal complaint, the -- anything leading to the plea,

19  whatever happened in between, any sentence that was entered and

20  that sealed record.  She does not need to answer record --

21  questions specific to those events.

22        And if the plaintiffs wish to have her answer those

23  questions, they must first go to the Justice Court and seek to

24  unseal the records for the limited purpose of using that

25  information in this proceeding.  And the Court would recommend

—2:19-cv-00965-RFB-EJY—

1  that if the parties do not already have a protective order, and

2  I do not recall if you do, that you enter into one that says

3  even if the records are unsealed, that those records -- that the

4  information would be subject to confidentiality and be submitted

5  under seal to this Court so it is not for public consumption,

6  and that any submission in any motion practice subsequently be

7  also submitted under seal.  But that would come after the

8  Justice Court unsealed the record.

9          But plaintiffs could certainly make the presentation

10  that the Federal Court made that recommendation to the parties

11  and would be in favor of such a protective order.

12          All content --

13          MR. HUBLEY:  Your Honor?

14          THE COURT:  Yes?  Can I finish my order before you --

15  before you ask any questions, let me finish my order,

16  Mr. Hubley.

17          All content --

18          MR. HUBLEY:  That's fine.

19          THE COURT:  -- and information in Ms. Carter's

20  possession that is not a record of criminal history that did not

21  originate with an agency of criminal justice and, therefore, is

22  not subject to seal under 179.285 is subject to discovery.  She

23  can be asked about all events that occurred in the classroom.

24  She can be asked about her conversations with the parents.  She

25  can be asked and must answer questions pertaining to her

1   conversation with Ms. Schumm.

2          I don't know with whom else Ms. Carter may have spoken,

3   but conversations with Las Vegas Metropolitan Police Department,

4   conversations with Clark County School District Police

5   Department are not discoverable at this time.

6          I'm distinguishing the cases of U.S. v. Olson or I'm

7   distinguishing the case of U.S. v. Olson.  In Olson, the FBI

8   sought to compel records from the Nevada Attorney General's

9   Office, and the files they sought related to a press release

10  announcing the defendant's plan -- plea agreement.  That falls

11  quite clearly within the definitions in 179.285 and 179A.030 and

12  070.

13         The Court doesn't disagree with that decision or with

14  the principles, but in that case the Court was faced with two

15  agencies of criminal justice and the disposition of a criminal

16  charge, which I've already said is not discoverable at this time

17  in this case.

18         Again, in Baliotis the Nevada Supreme Court held that

19  sealing statutes do not erase history and cannot require persons

20  who are aware of an individual's criminal record to disregard

21  independent facts known to them.

22         The decision also makes clear that the sealing statute

23  was enacted to enhance employment and other opportunities for

24  formerly convicted persons.

25         The statute, the Supreme Court says, does not impose on

—2:19-cv-00965-RFB-EJY—

1 members of the public who are aware of such convictions to

2 pretend such convictions do not exist.  There is no duty to

3 disavow information known independent of a criminal proceeding,

4 according to the Nevada Supreme Court.

5        Zana v. State of Nevada, another Nevada Supreme Court

6 decision, 125 Nev. 541 (2009), further supports that the Court

7 may order that testimony be given.  Zana involved the actual

8 victims.  And in this case the victim's quite young so I

9 understand that.  But, nonetheless, that -- that decision makes

10 clear that testimony is not precluded simply because there is an

11 underlying sealing order.  "Sealing orders are intended to

12 permit individuals to pursue law-abiding citizenship

13 unencumbered by records of past transgressions," Zana states.

14 "However, such orders do not erase history."

15        "Persons who are aware of an individual's criminal

16 record cannot disregard facts known to them.  Sealing erases an

17 individual's involvement in the criminal justice system; not

18 actual conduct and certainly not the conduct -- the effect of

19 that conduct on others."

20        I think that is pretty clear direction here that 28 --

21 179.285 does not prevent Ms. Carter, any Clark County School

22 District employee, or anyone else who was -- the parents or

23 anyone else who was a witness or participated outside of the

24 criminal justice system in this investigation or in the events

25 from testifying to their knowledge of what happened.

————2:19-cv-00965-RFB-EJY————

1          The -- the documents -- therefore, the Court finds --

2   oh, and I want to mention, excuse me, in Zana the Court

3   distinguished quite clearly between testimony that was properly

4   excluded regarding court proceedings, which would be excluded

5   here, and admitted testimony to which the sealing order does not

6   apply.  The same is true here.

7          So, the Court orders that all documents in Clark County

8   School District possession based on its administrative -- excuse

9   me -- record and investigation, that is Ms. Schumm's

10  investigation, are discoverable.  Doesn't mean they are

11  ultimately admissible.  It means they are discoverable.

12         The testimony -- the Court orders the testimony from

13  any fact witness about any of the events involving the plaintiff

14  are discoverable.  Testimony from individuals involved in the

15  administrative investigation, to the extent it pertains to their

16  discussions with witnesses, Ms. Carter, the alleged victim here,

17  the parents, are discoverable.

18         The -- all facts related to the events in the classroom

19  pertaining to the -- to the plaintiff, the use of the stick, and

20  related factual issues, facts, are discoverable to the extent

21  they are known independent of a criminal investigation.

22         All records pertaining to the reports of the events to

23  the Clark County School District, including witness statements

24  to the Clark County School District, not the Clark County School

25  District Police Department, in the possession of the Clark

—2:19-cv-00965-RFB-EJY—

1  County School District are admissible and -- excuse me -- are

2  discoverable.

3          As I stated, this includes witness statements.  All

4  records made or kept by Ms. Schumm, as I stated, regarding the

5  events are discoverable.

6          In sum, as plaintiff has said, any document in Clark

7  County School District's possession regarding the allegations in

8  this action that did not originate from an agency of criminal

9  justice, including the Clark County School District, are

10  discoverable, as is the testimony regarding the events that did

11  not -- the facts and knowledge of those events when that fact

12  and knowledge did not originate with an agency of criminal

13  justice.  Again, that leaves out Clark County School District

14  Police Department employees.

15          Plaintiff correctly points out that there is a

16  distinction between discoverability and ultimate admissibility

17  which will be decided by Judge Boulware.

18          Plaintiff's nolle plea is not discoverable.  No order

19  that was issued by the Justice Court is discoverable.  No plea

20  proceedings or other proceedings in that Justice Court

21  proceeding is discoverable.  No Las Vegas Metropolitan Police

22  Department records are discoverable.  No Clark County School

23  District records are discoverable.  No testimony from Clark

24  County School District Police Department employees that did

25  not -- that originated by virtue of their investigation is not

—2:19-cv-00965-RFB-EJY—

1  discoverable without the lifting of the sealing order.  And if

2  that is refused, the Court invites plaintiff to come back here

3  for the Court to consider supremacy arguments, abstention, and

4  comity; all of which are at issue.

5       Then I'm going to turn specifically to the -- to the

6  requests for admission and requests for -- for interrogatories

7  that were propounded on Ms. Carter.  I want to note before doing

8  that that Ms. Carter's position will be such that, if applied,

9  any defendant in a civil matter whose conduct at issue was also

10 the subject of a criminal -- sealed criminal matter would be

11 shielded from all discovery related to that criminal matter.

12 And all of those involved, even if not agencies of criminal

13 justice, in possession of information that related to the sealed

14 criminal matter would be precluded from disclosing their

15 knowledge and documents even if that knowledge or document did

16 not originate with the criminal justice agency, that is, if it

17 was independent of the criminal justice agency.

18      The policy and the legislative intent underlying

19 179.285 as expressed in Baliotis does not support this position

20 nor does the decision in Zana.  And the Court relies on those

21 decisions to reach its decision here today as well as the plain

22 language of 179.030 and 179 -- I'm sorry -- 179A.030, 179A.070

23 in its discussion of what's not a record of criminal history,

24 and in particular Subsection (j) which says:  Records which

25 originate in an agency other than an agency of criminal justice

—————2:19-cv-00965-RFB-EJY—————

1   in this state, because that is pretty plain on its face and it

2   uses the policy and legislative intent for purposes of

3   interpreting Sections 179A.070(2)(a) and (2)(b).  And the Court

4   notes that plaintiff's point that (2)(b) pertains to juvenile

5   court records -- I worked in juvenile courts for 10 years before

6   I was a lawyer.  I'm pretty familiar with those, too.

7          I also note that 179.244 states the public policy --

8   I'm sorry.  I have the wrong statute there.

9          I was going to cite the statute -- I'm sorry.  179.2405

10  of the Nevada Revised Statutes declares the public policy of the

11  state in favor of giving second chances to offenders who are

12  rehabilitated.  It doesn't say anything about giving them a

13  shield from civil liability.

14         So, with that, I'm going to turn to plaintiff's 1 --

15  Document 31, and in particular, first, the Exhibit 4 -- excuse

16  me -- Exhibit 5, which is the requests for admissions,

17  mistitled -- I'm sorry.  It's not mistitled -- and Request For

18  Admission Number 1.  Request For Admission Number 1 says that:

19  Admit that during 5/2/8 -- during the 5/2/18 incident you

20  physically touched a part of plaintiff's body with a pointer

21  stick to discourage maladaptive behavior on his part.  There's

22  an objection that this calls for a legal conclusion with respect

23  to maladaptive behavior.  And then plaintiff denies the

24  allegations to the extent they are set forth in the complaint.

25         The Court finds that the word "maladaptive" does not

—2:19-cv-00965-RFB-EJY—

1   require a legal conclusion.  However, it is a term that is

2   subject to more than one interpretation.  The portion of the

3   request that says "you physically touched a part of plaintiff's

4   body with a pointer stick" does not require an interpretation,

5   but the Court will -- I guess -- I guess what I am doing is

6   changing the objection, finding an objection that the word

7   "maladaptive" is subject to more than one interpretation and,

8   therefore, sustaining the objection and suggesting to plaintiffs

9   they reissue that request for admission with the word or words

10  that are not subject to multiple interpretations.

11          With request to -- I'm sorry.  With respect to Request

12  Number 6:  Admit that during the 5/2/18 incident you struck

13  plaintiff with a pointer stick with sufficient force to leave a

14  bruise on the plaintiff's lower leg, this is denied.  And then

15  it is said:  Without waiving any defenses, Carter denies the

16  allegations based on the 5/2 incident as set forth in the

17  complaint, because the 5/2/18 incident is defined as it is put

18  forth in the complaint.

19          That, plaintiff, Mr. Hubley, is a denial.  Unless

20  defendants want to qualify that, she has denied this.

21  Ms. Carter has denied this.  You can ask her about the events.

22  If she continues to deny this, you can bring a motion to the

23  Court with respect to those denials as you see fit.

24          So --

25          MR. HUBLEY:  Your Honor --

─2:19-cv-00965-RFB-EJY─

1           THE COURT:  Hold all of your questions until the end,

2   please.

3           Request Number 15, Admit that the pointer stick that

4   you are -- that you were using at the time of the 5/2/18

5   incident broke during the 5/2/18 incident.  Again, this -- the

6   objection calls for a legal conclusion concerning the definition

7   of "broke."  The Court overrules that objection.  The word

8   "broke" is pretty clear.  It means the stick broke.  I don't

9   know what part of that is unclear.  So that is overruled, and

10  the plaintiff must answer this question.  It is a factual

11  question about whether an event on 5/2 with a stick broke.  It

12  either did or it didn't.

13          So that objection is overruled and plaintiff is ordered

14  to respond to Request Number 15.

15          With respect to Number 16, there's no -- the request

16  says:  Admit that plaintiff cried during the 5/2/18.  The

17  objection is this calls for a legal conclusion concerning the

18  definition of cried.  The Court overrules that objection as

19  well, and plaintiff is ordered to answer Request Number 16.

20          Request Number 19, Admit that you spoke with Principal

21  Schumm about the 5/2/18 incident on 5/2/18.  This is denied.  If

22  the Court -- I -- it is a denial.  That it is clarified after

23  that, it doesn't matter.  It is a denial.  You admit or deny

24  requests for admissions.  This is denied.  If plaintiff wishes

25  to supplement this response in some way, they're free to do so.

─────────2:19-cv-00965-RFB-EJY─────────

1  Plaintiff is free to ask questions about conversations between

2  Ms. Carter and Principal Schumm and -- at deposition, and

3  Ms. Carter must answer those factual questions.

4          Request Number 19 -- excuse me -- 21:  Admit that you

5  talked to plaintiff's parents at the school during the fall of

6  2017 semester about the deprivation allegations.  This is also

7  denied.  And to the extent plaintiff wishes to amend this order

8  given the other orders the Court has issued, the Court would

9  give you free leave to do so.  And plaintiff may ask

10 plaintiff -- excuse me.  Plaintiff may ask defendant about any

11 conversations she had with parents during the fall semester of

12 2017 irrespective of what the subject matter is since none of

13 that is unsealed.

14         Those are the -- those are the requests for admissions.

15 With respect to interrogatories, I turn first to Interrogatory

16 Number 12 which asks for the full name, street addresses,

17 telephone numbers of persons known to you, and I won't read the

18 entire thing, relating to the events -- the 5/2/18 incident.

19 There's an objection.  This is overbroad, burdensome, compound,

20 confidential, privileged, calls for a legal conclusion or

21 factual determination as to the allegations set forth in the

22 complaint as to 5/2/18.

23         The factual events of 5/2/18 are not under seal.

24 Ms. Carter believes what occurred occurred.  I don't know what

25 she believes happened.  Plaintiffs believe what they believe

—————2:19-cv-00965-RFB-EJY—————

1    about what happened, but in any event, what happened on 5/2/18

2    from a factual perspective is not under seal.

3           And the plaintiff has a duty under Rule 26 to provide

4    the names of individuals with information or knowledge relevant

5    to the complaint so this objection is overruled.  And plaintiff

6    must provide that information that would ordinarily be required

7    under Rule 26.  If plaintiff wants to ask Ms. Carter about

8    anybody else that might have knowledge of these events in

9    deposition, they certainly can do so.

10           Interrogatory Number 14 says:  Please fully describe

11    the 5/2 incident, include whether you struck plaintiff with any

12    part of your body or with an object, describing the object if

13    there was one, the reasons you did so, the location where you

14    made contact with the plaintiff's body, the number of times, and

15    if you used an object, an explanation as to what happened to the

16    object after 5/2/18 incident.

17           I understand the objection as to 5/2/18 incident or as

18    to that definition in the complaint, but the facts of what

19    happened on 5/2/18 are discoverable.  And so this

20    interrogatory -- the objection is overruled to the extent that

21    plaintiff seeks the facts about what happened from -- on 5/2/18

22    from Ms. Carter.  Ms. Carter is not subject to criminal

23    proceedings.  There's no Fifth Amendment privilege here.  And

24    whether these -- this testimony and response from Ms. Carter's

25    ultimately admissible will be decided by Judge Boulware.

———2:19-cv-00965-RFB-EJY———

1        Interrogatory Number 16 says:  Please identify and
2  fully describe your employment history, including anything going
3  back as far as a two-year associate degree.  I have no idea how
4  long Ms. Carter has been a teacher.  If she has been a teacher
5  for 50 years, this could potentially be overbroad.  If she's
6  been a teacher for two years, it clearly is not.  But I don't
7  have that information.
8        What I -- I would say is that if plaintiff -- if
9  plaintiff has a résumé or information that she provided to the
10 Clark County School District with her application, that that
11 same information with respect to her teaching history should be
12 provided to the defendants -- excuse me -- to the plaintiffs.
13       MR. HUBLEY:  Your Honor, if I may.  Can I just -- I
14 just want to jump in real quick.  This is Gregg Hubley.  You've
15 said a couple of times "plaintiff," I think when you were
16 referring to Ms. Carter, and I just want to make sure that we're
17 all on the same page.
18       THE COURT:  The defendant is Ms. Carter.  To the extent
19 I referred to her as plaintiff, at all times she is the
20 defendant, Ms. Carter.
21       So that -- to the extent 16 requests her employment
22 history, she is to provide the same information she provided to
23 Clark County School District.  And I believe those were all of
24 the requests for production -- excuse me -- interrogatories and
25 requests for admissions.

─────2:19-cv-00965-RFB-EJY─────

1          With respect to the Clark County School District, I am

2    looking at their response to the motion to compel, which is

3    Document 26.  And they indicate that the only information that

4    has been withheld is the investigation, the administrative

5    investigation, done by the principal.  And I order that that be

6    produced.  I do not know if I need to go through all the

7    interrogatories and requests for production that are listed

8    in -- excuse me -- listed in Footnote 3 of the Clark County

9    School District response to the motion to compel or if the order

10   otherwise makes things clear as to what the Clark County School

11   District must produce.

12          MS. HENDRICKS:  Very clear, Your Honor.  We'll produce

13   that file.

14          THE COURT:  Okay.  And is that -- would that,

15   Ms. Hendricks, be responsive to all, if not most, of these

16   requests and interrogatories?

17          MS. HENDRICKS:  I believe so, Your Honor.  We produced

18   already over 200 -- or 2,000 pages of documents in this case.

19   Some of them there was some overlap and so we put the reference

20   in -- the references in there, but to my knowledge, the only

21   thing that has not been produced that is responsive or

22   potentially responsive is the principal's file.  And we'll go

23   ahead and get that ready to produce based on Your Honor's

24   decision and separate and apart from the police report which

25   we're understanding is not subject to production.

—2:19-cv-00965-RFB-EJY—

1          THE COURT:  That's correct.

2          That is the Court's order.  I know that you were

3   seeking a written order.  If I do a written order, it's going to

4   delay this process quite a while.  So I would -- my order is

5   that the -- that the oral order is the record and the order of

6   the Court.  If there is any confusion, you can certainly come

7   back and ask me, but the Clark County School District certainly

8   should understand your representation, Ms. Hendricks.

9          And, likewise, Mr. Kurth, I'm sure Ms. Carter will

10  understand.  She may not be happy, but she will understand.

11         Are there any questions seeking clarification?  And to

12  the extent I referred to the -- any of the defendants as

13  plaintiff, the Court makes that correction on the record now as

14  Ms. Carter is the defendant, Clark County School District is the

15  defendant.  This order pertains to those two defendants.  Clark

16  County School District Police Department is not a defendant.

17  Clark County School District Police Department is not a subject

18  of any of the motions before me, and nothing in the possession

19  of the Clark County School District Police Department is

20  discoverable at this time.  That would be subject to a

21  separate -- a separate motion and would probably need to be

22  addressed first depending on what's in their position, I don't

23  know, by an action with the Justice Court seeking to unseal the

24  record for purposes of this proceeding only.

25         Any questions?  Mr. Hubley?

—2:19-cv-00965-RFB-EJY—

1        MS. HENDRICKS:  Your Honor --

2        THE COURT:  Oh, go ahead, Ms. Hendricks.  Go ahead.

3        MS. HENDRICKS:  Yeah.  Okay.  I'll be quick because I

4   think you've been very thorough, and we'll certainly get a copy

5   of the recording.

6        The only question that I have, and you've been very

7   clear that the police report may not be produced and the police

8   employees will not be at this point in time subject to

9   deposition in this case.  And my question is as to those fact

10  witnesses that may have been interviewed by police.  The way I

11  understand the order is that plaintiff may ask them questions

12  about what they saw.  And I just want to get clarification about

13  their discussions with the police and if those specific

14  discussions with the police are off limits and they only can

15  talk about the facts.  Can you clarify that for me?

16       THE COURT:  Yes.  There -- the questions and answers in

17  the investigation done by the Clark County School District

18  Police Department are not discoverable at this time.  The

19  independent facts that these individuals may have are -- is

20  discoverable and any witness statement given to the Clark County

21  School District.  I understand there was one in particular that

22  was given the day after the events, if not the day of the

23  events, by the school aid that was in the classroom.  That is

24  discoverable.

25       MS. HENDRICKS:  Understood, Your Honor.  Thank you.

1          THE COURT:  Okay.  Turning to Mr. Hubley.  Do you have

2     any requests -- any questions for the Court?

3          MR. HUBLEY:  Well, first, Your Honor, I'm wondering

4     what is the time frame within which we are going to get our

5     supplemental responses.

6          THE COURT:  I would hope that the parties would do that

7     promptly.  Ms. Hendricks already indicated that she would

8     prepare the -- Ms. Schumm's file for production.

9          With respect to Ms. Carter, Mr. Kurth, tell me what --

10    what is reasonable for her to produce records in her possession

11    that did not originate with an agency of criminal justice.  I

12    don't know what she has.  And with -- except for the résumé,

13    curriculum vitae, whatever you want to call it that I ordered

14    produced.  I don't know how long that would take and how long it

15    might take you to supplement, if you choose to, any responses to

16    interrogatories or requests for admissions.  How long would you

17    like?

18         MR. KURTH:  Judge, respectfully, Robert Kurth.  I would

19    like to -- I'll just say two weeks.  But, Judge, I just -- I

20    just spoke with -- Ms. Carter was in the hospital and she -- she

21    was definitely ill.  I don't think she had the -- this virus,

22    but she was just -- just getting out.  So I'm not sure.  I just

23    spoke with her the day before yesterday, I think it was.  Might

24    have been yesterday.  But I'm not sure how she's doing, if I

25    need to deal with anything that's her directly is all I would

1  say is there's that difference.

2          THE COURT:  Okay.  So today is April 9th?

3          MR. KURTH:  A week from tomorrow.  Would that be good?

4          THE COURT:  A week from tomorrow is just fine.  I was

5  going to give you two weeks, so ...

6          So because this -- this whole craziness with COVID-19

7  has created pressures on people outside of litigation.  So

8  rather than you needing to request an extension, given your

9  representation regarding Ms. Carter's health, why don't we say

10 two weeks from today, which would make it due the 23rd of April.

11         MR. KURTH:  That would be great.

12         MS. HENDRICKS:  And, Your Honor, may I have two weeks

13 as well?  We'll try to do it sooner than that, but I -- I need

14 to make sure -- getting the records from my client right now is

15 a little tricky, and I want to make sure I have everything

16 available to produce and do it at one time.

17         THE COURT:  Yes, you may.  23rd for the production by

18 Clark County School District as well.

19         MS. HENDRICKS:  Thank you.

20         THE COURT:  Mr. Hubley, what else can I help with?

21         MR. HUBLEY:  Uhm.  You know, Your Honor, earlier I was

22 going to ask some questions, but I think you've since

23 elucidated, if you will.  The -- you had -- you had indicated

24 that Defendant Carter's position with respect to answering

25 discovery was overruled with the exception of pertaining to the

1  plea that she entered, the criminal complaint against her, and

2  the sentence.  Those were the three things that I wrote down.  I

3  think since then you've kind of identified the basis for which,

4  you know, this information would be subject to the sealing

5  order.  In other words, information that they've obtained

6  independently of any charge -- of any charging documents, that

7  sort of thing, is open.

8          So I guess what I'm trying to say is I don't think I

9  need any further elucidation of that, but I did want to confirm

10  those were the three areas that you mentioned.

11          THE COURT:  Well, the -- I will say this.  Ms. Carter

12  must answer fact questions about the events pertaining to May

13  2nd, her history, her -- ordinary questions about her

14  professional history, her personal history as it relates and is

15  appropriate, her -- her education, and the events of 5/2 of --

16  I'm sorry.  Is it '18?  You'd think I'd have that in my head.

17          MR. HUBLEY:  It is, Your Honor, yes.

18          THE COURT:  '18.  Right, of '18.  She does not need to

19  answer any questions about conversations with the Las Vegas

20  Metropolitan Police Department or conversations with the Clark

21  County School District Police Department or anything that

22  pertains to the criminal proceedings starting from the complaint

23  forward.  That is all subject to the sealing record -- to the

24  sealing order.  If you wish to be able to inquire into those

25  areas, you must go to the State Court first and attempt to get

--------2:19-cv-00965-RFB-EJY--------

1  the records unsealed for purposes of this proceeding.

2        MR. HUBLEY:  Thank you, Your Honor.

3        THE COURT:  Is there anything further?

4        MR. KURTH:  Judge, this is Robert Kurth.  I

5  understand -- I think I understand everything sufficiently.  And

6  I appreciate the time and the effort that you've taken in this.

7  I just wanted to point out that that one reason, like with the

8  way the instructions were given or something then similarly --

9  discovery questions, simply referring to like, you know, the

10 criminal complaint and affidavit of the detective, registered

11 actions with the Police Department.  So, I mean, that was one

12 reason for -- because those -- it seemed like they were

13 incorporating that, but now I understand it's just -- we're just

14 dealing with the factual issue unrelated to that.

15       THE COURT:  All right.  Any -- any record or work done

16 by Las Vegas Metropolitan Police Department is currently under

17 seal as is anything by the Clark County School District Police

18 Department, but the facts relating to the event are not sealed.

19 And so any questions that relate to the facts of the event,

20 including the use of the stick and what happened to the stick,

21 what kind of stick it was, those are fact questions that are

22 independent of those investigations, and that is all

23 discoverable.  Whether it is ultimately admissible will be

24 decided by somebody else.

25       And, again, if the -- if the Justice Court does not

—2:19-cv-00965-RFB-EJY—

1   order this unsealed for a limited purpose, you may bring this

2   back to this Court.  You do not have to.  I will also say that

3   if you have specific questions that arise relating to this

4   order, you can call my chambers and ask for a conference call

5   which I will put on the record, but I -- you know, rather than

6   filing more motions about what we've decided here today.  And

7   I -- because I would like to try to avoid another 100 pages and

8   the effort that goes into that.

9          I'm also going to deny the request for attorney's fees

10  and costs.  I think the Clark County School District's position

11  in particular was understandable given its desire not to run

12  afoul of a Justice Court order.  I think Ms. Carter's position

13  was overbroad, a little less defensible, but nonetheless in good

14  faith.  And I will not order fees and costs at this time.

15         The transcript of this proceeding is the order of the

16  Court.

17         I thank you all for your patience and your

18  professionalism today and your well-presented written papers.

19  Everything I get is not well written.  Thank you everyone.  Have

20  the best -- have a good rest of your day.

21         MR. HUBLEY:  Thank you so much, Your Honor.  I

22  appreciate it.

23         MR. KURTH:  Thank you, Judge.

24         (Whereupon the proceedings concluded at 12:16 p.m.)

25

—2:19-cv-00965-RFB-EJY—

1                        --oOo--

2        I, Patricia L. Ganci, court-approved transcriber, certify

3   that the foregoing is a correct transcript transcribed from the

4   official electronic sound recording of the proceedings in the

5   above-entitled matter.

6

7        /s/ PATRICIA L. GANCI        APRIL 16, 2020
         Patricia L. Ganci               Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25